JOSHUA D. HURWIT, IDAHO STATE BAR NO. 9527
UNITED STATES ATTORNEY
KATHERINE L. HORWITZ, OKLAHOMA STATE BAR NO. 30110
ASSISTANT UNITED STATES ATTORNEY
1290 W. MYRTLE STREET, SUITE 500
BOISE, IDAHO 83702
TELEPHONE: (208) 334-1211
FACSIMILE:  (208) 334-1413

KRISTEN CLARKE
ASSISTANT ATTORNEY GENERAL
ALEC WARD, DISTRICT OF COLUMBIA BAR NO. 1781142
TRIAL ATTORNEY
CIVIL RIGHTS DIVISION
950 PENNSYLVANIA AVENUE
WASHINGTON, DISTRICT OF COLUMBIA 20530
TELEPHONE: (202) 532-3991

## UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> MATTHEW ALAN LEHIGH, <br><br> Defendant. | Case No. 1:23-cr-00012-BLW <br><br> **PLEA AGREEMENT UNDER RULE 11(c)(1)(C)** |

Rev. March 2022

## I.      GUILTY PLEA

**A.      <u>Summary of Terms.</u>**  Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the Defendant, the attorney for the Defendant, and the Government[1] agree that the Defendant will plead guilty to Counts One and Two of the Information, which charge the Defendant with Hate Crime Acts in violation of 18 U.S.C. § 249(a)(2). This plea is voluntary and did not result from force, threats, or promises, other than any promise made in this agreement.  Upon acceptance of the Defendant's guilty plea(s), and the Defendant's full compliance with the other terms of this agreement, (1) the Defendant will be sentenced to a total custodial sentence of 37–46 months of imprisonment, to be followed by a five-year term of supervised release, on terms described below, and; (2) the Government will not prosecute the Defendant for any other crimes based on conduct by the Defendant of which it is aware at the time of the Defendant's change of plea.

**B.      <u>Oath.</u>**  The Defendant will be placed under oath at the plea hearing.  The Government may use any statement that the Defendant makes under oath against the Defendant in a prosecution for perjury or false statement.

## II.      WAIVER OF CONSTITUTIONAL RIGHTS AT TRIAL

The Defendant waives the following rights by pleading guilty pursuant to this agreement: 1) the right to plead not guilty to the offense(s) charged against the Defendant and to persist in that plea; 2) the right to a trial by jury, at which the Defendant would be presumed innocent and the burden would be on the Government to prove the Defendant's guilt beyond a reasonable doubt; 3) the right to have the jury agree unanimously that the Defendant was guilty of the offense; 4) the right, at trial, to confront and cross-examine adverse witnesses; 5) the right to present evidence and to compel the attendance of witnesses; and 6) the right not to testify or present evidence without

---

[1] The word "Government" in this agreement refers to the United States Attorney for the District of Idaho and the Civil Rights Division of the United States Department of Justice.

having that held against the Defendant.  If the Court accepts the Defendant's guilty plea, there will be no trial.

## III.    NATURE OF THE CHARGES

**A.**    **Elements of the Crime.**  The elements of the crime of Hate Crime Acts, as charged in Counts One and Two, are as follows:

1.    The Defendant attempted to cause bodily injury using a dangerous weapon, (to wit, a car);

2.    The Defendant acted because of the actual or perceived sexual orientation of any person;

3.    The Defendant used a dangerous weapon (to wit, a car) that had traveled in interstate and foreign commerce.

**B.**    **Factual Basis.**    The Defendant admits the following facts are true:

On October 5, 2022, the Defendant was present in the vicinity of a residential property owned and regularly occupied by B.P. and J.S. B.P. and J.S. are a same-sex couple, and had placed a rainbow-striped "pride" flag on a flag pole attached to the front porch of their home. Seeing the flag and understanding its symbolic meaning, and also believing that the presence of the flag indicated that the home was owned or occupied by one or more lesbian, gay, bisexual, or transgender ("LGBT") people, Defendant made unlicensed and unprivileged entry onto the property and set the flag on fire. To conceal his actions from later detection, he obstructed the lens of a video doorbell camera attached to the front of the home adjacent to the door.

Later that same day, the Defendant was present in the vicinity of a commercial property jointly occupied by The Community Center, a nonprofit social services organization dedicated to supporting and advocating on behalf of the LGBT community in the Treasure Valley area, and The Metropolitan Community Church of Boise, a nonprofit Protestant Christian congregation that expressly accepts and affirms LGBT individuals of Christian faith. Defendant knew of and

understood the LGBT-affirming beliefs and theology of the Metropolitan Community Church, and vehemently objected to them, because he believes that the Bible mandates rejection and condemnation of individual who pursue same-sex romantic relationships and individuals whose gender identity does not correspond with their biological sex. In order to express his objection to the Metropolitan Community Church's beliefs, Defendant retrieved a tire iron from the spare tire replacement kit in his car, and used it to smash several plate-glass windows along the façade of the facility.

On, October 7, 2022, the Defendant was shopping at the Whole Foods Market grocery store in downtown Boise. While shopping, he observed another customer wearing a windbreaker emblazoned with a five-pointed star on the back. Believing that the jacket symbolized the customer's belief in "wiccan" or "occult" religious beliefs, the Defendant approached the customer and called him a "faggot." The customer walked away, but encountered Defendant in another part of the store a few minutes later. This time, Defendant approached the customer, again called him a "faggot," issued a verbal threat, then punched the customer once in the head, knocking him to the floor. Store employees reported the incident to police, but Defendant fled the store before police responded.

On October 8, 2022, the Defendant went to the Boise Public Library Main Branch, located at 715 S. Capitol Boulevard in the city of Boise. While inside, he encountered J.M., a library employee who is transgender. Defendant approached J.M., called her a "faggot," and made a verbal threat to stab her. J.M. attempted to walk away from the Defendant, but he approached her and struck her once with a closed fist. The Defendant's attack drew the attention of victim A.C., also a library employee. A.C. attempted to intervene to defend J.M. from further attack, whereupon the Defendant fled the library building into the library parking lot outside. A.C. pursued the Defendant, intending to inform him that he was being barred from library property and to warn him not to

**Plea Agreement**                                           3                                           Rev. March 2022

return. Defendant got into his car, which was parked in the library lot. A.C. approached Defendant's car and gestured for Defendant to roll down his window, whereupon Defendant suddenly reversed out of his parking stall, lined the front bumper of his car up with A.C., and accelerated his car forward toward A.C. The Defendant's intention in doing so was to collide with A.C. and thereby to cause him bodily injury. The Defendant wished to cause A.C. bodily injury because he was angry with A.C. for coming to the defense of J.M., and because of J.M's actual and perceived gender identity. A.C. escaped being struck only because he jumped onto a concrete barricade. The Defendant's car struck the concrete barricade, where A.C. had been standing just moments before, at significant speed. The Defendant then reversed again, rolled down his window, and shouted the word "faggot" at A.C. before driving away.

On October 12, 2022, at approximately 2:00 PM, the Defendant was sitting in his car in a public parking lot on the grounds of Kathryn Albertson Park in the city of Boise. Victims C.S. and S.T., who had arrived at the park in C.S.'s car parked in the same lot while visiting the park, entered the parking lot and walked toward C.S.'s car. Defendant saw C.S. and S.T. and assumed, based on their appearance and dress, that they were lesbian. As C.S. and S.T. walked through the parking lot, the Defendant rolled down his driver's-side window and began to shout threats and slurs at C.S. and S.T. Among other things, Defendant stated "I'm going to run you over, you fucking faggots." After stating this, the Defendant reversed out of his parking stall, lined the front bumper of his car up with C.S. and S.T., and accelerated his car forward toward C.S. and S.T. His intent in doing so was to collide with C.S. and S.T. and thereby to cause them bodily injury. The defendant wished to cause C.S. and S.T. bodily injury because he believed, based on their outward appearance, that they were lesbian. C.S. and S.T. escaped being struck only because they jumped out of the path of the Defendant's oncoming car. The Defendant's car struck C.S.'s car at significant speed, damaging its driver's-side door and front quarter panel.

**Plea Agreement**                                    4                                    Rev. March 2022

At the time Mr. Lehigh committed these offenses, he was suffering from a significantly reduced mental capacity resulting from an untreated mental illness. Although the illness contributed significantly to the commission of the charged offenses by impairing Mr. Lehigh's ability to control behavior he knew to be wrongful, it did not prevent him from forming the mental states necessary to carry out the charged offenses.

## IV.     SENTENCING FACTORS

**A.     Penalties.**  The violations of the Hate Crimes Prevention Act, 18 U.S.C. § 249, charged in Counts One and Two of the Information, are punishable by:

    **1.** A term of imprisonment of 10 years;

    **2.** a term of supervised release of not more than 5 years for each count;

    **3.** a maximum fine of $250,000, and a special assessment of $100.

**B.     Supervised Release.**  Pursuant to this agreement, the parties agree that the Defendant should be sentenced to a five-year term of supervised release.  The law permits the combined prison time and term of supervised release to exceed the maximum term of incarceration for the crime(s) to which the Defendant is pleading guilty.  Violation of any condition of supervised release may result in further penalties and prosecution. The parties agree that the conditions of the Defendant's period of supervised release should include (but not be limited to):

- That the Defendant not use or consume any alcohol or marijuana, or any products containing tetrahydrocannabinol ("THC") or synthetic equivalents;

- That the Defendant not possess any firearms or dangerous weapons;

- That the Defendant remain continuously under the care of a licensed clinical psychiatrist, unless a psychiatrist certifies to the Probation Office, in writing, that in his or her considered medical opinion, Mr. Lehigh would not benefit from any further psychiatric treatment, and the Probation Office concurs with that assessment.

- That, while under psychiatric care, the Defendant comply with all treatment instructions given to him, to include instructions that he adhere to a medication regime and instructions that he receive inpatient treatment in a psychiatric or other healthcare facility;

- That the Defendant give his psychiatrist and any other mental healthcare provider permission to provide periodic reports on the progress of his treatment to the United States Probation Office, and to notify them if:

  o He discontinues treatment or fails to attend appointments;

  o He is noncompliant with any medication regime or other treatment instruction;

  o He fails to admit himself to inpatient treatment when instructed to do so, or;

  o The provider believes that Mr. Lehigh poses a danger to the public or to any person;

- That the Defendant permit any law enforcement officer or United States Probation Officer, with or without reasonable suspicion of a crime or violation of conditions of supervised release, with or without a warrant, to conduct a search at any time of his person, place of residence, personal property, and any containers, computers, cell phones, digital storage media, or other effects in his possession.

The parties agree that these terms are reasonably related to the nature and circumstances of the offense and the history and characteristics of the Defendant; the need for the sentence imposed to afford adequate deterrence to criminal conduct; the need to protect the public from further crimes of the Defendant; and the need to provide the Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and that they involve no greater deprivation of liberty than is reasonably necessary for those purposes.

**C.**      **Fines and Costs.**  The Court may impose a fine.  No agreement exists as to its amount.  The Court may also order the Defendant to pay the costs of imprisonment, probation, and supervised release.

**D.**      **Special Assessment.**  The Defendant will pay the special assessment(s) before sentencing and will furnish a receipt at sentencing.  Payment will be made to:

> The United States District Court, Clerk's Office
> Federal Building and United States Courthouse
> 550 West Fort Street, Fourth Floor
> Boise, Idaho 83724

**E.**      **Restitution.**  In addition to paying any forfeiture, fine, and costs imposed, the Defendant also agrees to pay restitution equal to the full amount of loss caused to any victim, totaling $7,103.26.  The Defendant agrees to pay restitution in the full amount as ordered by the Court.

## V.      SEIZED PROPERTY: ABANDONMENT AND WAIVER

The Defendant abandons, releases, and waives any interest in property seized or otherwise obtained by the Government or law enforcement in this case unless specific exceptions are noted in this agreement.  Such property will be disposed of, destroyed, sold, or transferred in the Government's sole discretion.  Such disposition shall not constitute satisfaction of any assessment, fine, restitution, forfeiture, cost of imprisonment, or any other penalty that this Court may impose.

## VI.      UNITED STATES SENTENCING GUIDELINES

**A.**      **Application of Sentencing Guidelines.**  The Court must consider the sentencing guidelines in determining an appropriate sentence under 18 U.S.C. § 3553.  Pursuant to Rule 11(c)(1)(C), the parties agree that the defendant should be sentenced between 37–46 months' imprisonment. Additionally, the parties agree under Rule 11(c)(1)(C) that the defendant should be sentenced to a five-year term of supervised release in addition to a sentence of incarceration within the agreed-upon guideline range of 37–46 months.

The parties further agree to the recommendations and requests set forth below.

**B.**    **Sentencing Guidelines.**

  **1.**    **Government's Statements at Sentencing.**  The Government reserves the right to allocute fully at sentencing regarding any sentencing recommendation.  The Government may rely on or submit any information, including relevant conduct, in support of its recommendation regardless of whether the agreement or the pre-sentence investigation report contain this information.   Any exception must be specified in this agreement.

  **2.**    **Acceptance of Responsibility.**    If the Defendant clearly accepts responsibility for the offense, the Defendant will be entitled to a reduction of two levels in the combined adjusted offense level under USSG § 3E1.1(a).   The Government will move for an additional one-level reduction in the combined offense level under § 3E1.1(b) if the following conditions are met: (1) the Defendant qualifies for a decrease under § 3E1.1(a); (2) the offense is level 16 or greater; and (3) the Defendant has timely notified authorities of the Defendant's intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.   If, before sentence is imposed, the Defendant fails to meet U.S.S.G. § 3E1.1's criteria, or acts in a manner inconsistent with acceptance of responsibility, the Government will withdraw or decline to make the motion.

  **3.**    **Hate Crime Motive**

  By joining this Agreement, the Defendant admits that he intentionally selected the victims of the offense charged in Count One of the Information because of the perceived sexual orientation of the victims. The Defendant also admits that he intentionally selected the victim of the offense charged in Count Two of the Information because of the actual and perceived gender identity of J.M., a person whom the victim was attempting to defend from assault. Defendant agrees that these admissions, in conjunction with other admissions made in this Agreement, provide a

**Plea Agreement**         8         Rev. March 2022

sufficient factual basis for the Court, at the time of sentencing, to find beyond a reasonable doubt that U.S.S.G. § 3A1.1 applies to Count One and Count Two.

### 4. Base Offense Level Cross-Reference

The parties agree that the base offense level for the violations of 18 U.S.C. § 249(a) charged in Count One and Count Two of the Information is supplied by U.S.S.G. § 2H1.1(a). The parties further agree that, for purposes of determining the base offense level under U.S.S.G. § 2H1.1(a), the underlying offense as to both Count One and Count Two of the Information is Aggravated Assault as defined in U.S.S.G. § 2A2.2, and that both Count One and Count Two involved the use of a dangerous weapon within the meaning of U.S.S.G. § 2A2.2(b)(2)(B).

### 5. No Downward Departure for Diminished Capacity

Notwithstanding the fact that Mr. Lehigh was suffering from a significantly reduced mental capacity at the time of the offenses, the parties agree that the guideline range is the appropriate sentence of imprisonment in this case. Given the Government's commitment in Paragraph I(A) of this Agreement to bring no additional charges against Mr. Lehigh in connection with conduct presently known to it, the parties agree that no additional downward departure from the guideline sentence for the charged offenses would be appropriate.

## VII. WAIVER OF RIGHT TO DIRECT APPEAL AND TO COLLATERAL ATTACK UNDER 28 U.S.C. § 2255

A. **Waiver.** In exchange for this agreement, and except as provided in subparagraph B, the Defendant waives any right to appeal or collaterally attack plea, conviction, judgment, and sentence, including forfeiture and restitution. This waiver includes any challenge to the constitutionality of any statute of conviction including arguments that the admitted conduct does not fall within any statute of conviction.

The Defendant acknowledges that this waiver will result in the dismissal of any direct appeal or collateral attack the Defendant might file seeking to challenge the plea, conviction, or sentence

in this case.  Further, the filing of such an appeal or collateral attack will breach this agreement and allow the Government to withdraw from it, as well as to take other remedial action.

If the Defendant believes the Government has not fulfilled its obligations under this agreement, the Defendant will object at the time of sentencing; further objections are waived.

**B.**   **Exceptions.**

**1.**   **Direct Appeal.**  Notwithstanding subparagraph A, the Defendant may file one direct appeal if one of the following unusual circumstances occurs:

> a.   the sentence imposed by the Court exceeds the statutory maximum;
>
> b.   the Court arrived at an advisory sentencing guidelines range by applying an upward departure under chapter 5K of the relevant sentencing guidelines manual; or
>
> c.   the Court exercised its discretion under 18 U.S.C. § 3553(a) to impose a sentence that exceeds the advisory sentencing guidelines range as determined by the Court.

The Defendant understands that the above circumstances occur rarely and that in most cases this agreement completely waives all appellate rights.

**2.**   **Motion Under 28 U.S.C. § 2255.**  Notwithstanding subparagraph A, the Defendant may file an ineffective assistance of counsel claim in a 28 U.S.C. § 2255 motion.

## VIII.   PROVIDING INFORMATION FOR THE PRESENTENCE REPORT

The Defendant agrees to provide financial information and any other information requested by a representative of the United States probation office for use in preparing a pre-sentence investigation report, and agrees that the United States probation office may share all financial information with the Government.  Failure to execute releases or to provide information for the pre-sentence investigation report violates this agreement and relieves the Government of its obligations from it.  Such failure will not, however, constitute grounds for withdrawing the plea of guilty unless

the Government so requests.  Providing materially false information will subject the Defendant to additional penalties, including an enhancement under U.S.S.G. § 3C1.1.

## IX.     DISCLOSING FINANCIAL INFORMATION

The Defendant agrees to disclose all the Defendant's assets and sources of income to the Government, including all assets over which the Defendant exercises or exercised direct or indirect control, or in which the Defendant has any financial interest.  This includes all community property. The Defendant also agrees to cooperate in obtaining any records relating to ownership of assets when sought by the Government.  The Defendant agrees truthfully to complete a personal financial statement within 14 days from the date the Defendant signs this agreement or from the date the financial statement is provided to the Defendant or counsel, whichever is later.  The Defendant agrees to provide updates with any material changes in circumstances, as described in 18 U.S.C. § 3664(k), within 7 days of the event giving rise to the changed circumstances.  The failure timely and accurately to complete, sign, and update the financial statements may constitute failure to accept responsibility under U.S.S.G. § 3E1.1, as well as other things.

The Defendant authorizes the Government:  (a) to obtain a credit report on the Defendant; (b) to inspect and copy all financial documents and information held by the United States probation office; and (c) to obtain all financial records related to the Defendant.

Before sentencing, Defendant agrees not to dissipate any assets without the consent of both the Government's financial litigation unit and asset forfeiture unit.  If any assets are sold, any sale proceeds will be deposited with the Clerk of Court and, upon sentencing, paid toward any monetary penalties ordered in the judgment.

## X.     NO RIGHT TO WITHDRAW PLEA

The Defendant understands that the Court may not follow all the recommendations or requests made by the parties at the time of sentencing.  The Defendant cannot withdraw from this agreement or the guilty plea, unless the Court rejects the agreement pursuant to Fed. R. Crim. P. 11(c)(3)(A), in which case the Defendant may withdraw his plea of guilty.

## XI.    CONSEQUENCES OF VIOLATING AGREEMENT

A.     **Government's Options.**  If the Defendant fails to keep any promise in this agreement or commits a new crime, the Government is relieved of any obligation:  1) to make a sentencing recommendation consistent with the terms promised in this agreement; and 2) not to prosecute the Defendant on other charges, including charges not pursued due to this agreement.  Such charges may be brought without prior notice.  If the Government determines that a breach warrants prosecution before sentencing, it may withdraw from this agreement in its entirety.  In addition, if the Government determines after sentence is imposed that the Defendant's breach of the agreement warrants further prosecution, the Government may choose between letting the conviction(s) under this agreement stand or vacating such conviction(s) so that charge(s) may be re-prosecuted.

The Government's election to pursue any of the above options provides no basis for the Defendant to withdraw the guilty plea(s) made pursuant to this agreement.

B.     **Defendant's Waiver of Rights.**  If the Defendant fails to keep any promise made in this agreement, the Defendant gives up the right not to be placed twice in jeopardy for the offense(s) to which the Defendant entered a plea of guilty or which were dismissed under this agreement.  In addition, for any charge that is brought as a result of the Defendant's failure to keep this agreement, the Defendant gives up: (1) any right under the Constitution and laws of the United

States to be charged or tried in a more speedy manner; and (2) the right to be charged within the applicable statute of limitations period if the statute of limitations has expired.

Furthermore, if the Defendant does not enter an acceptable plea, the Government will move to continue the trial now set to allow the Government adequate time to prepare. The Defendant agrees not to contest such a continuance, and agrees that the resulting delay would be excludable time under 18 U.S.C. § 3161(h).

## XII.   MISCELLANEOUS

**A.**   **No Other Terms.**   This agreement is the complete understanding between the parties, and no other promises have been made by the Government to the Defendant or to the attorney for the Defendant. This agreement does not prevent any governmental agency from pursuing civil or administrative actions against the Defendant or any property. Unless an exception to this paragraph is explicitly set forth elsewhere in this document, this agreement does not bind or obligate governmental entities other than that specified as the Government in this agreement (i.e., the United States Attorney's Office for the District of Idaho).

**B.**   **Plea Agreement Acceptance Deadline.**   This plea offer is explicitly conditioned on the Defendant's notification of acceptance of this agreement no later than 5:00 p.m. on May 19, 2023.

**C.**   **Credit for Time Served.**   The parties agree that the Defendant should receive credit against the sentence imposed pursuant to this Agreement for time already served in pretrial detention, to include 119 days of time served in state custody on related charged (accounting for the period running from his initial arrest on October 12, 2022, to his arrest on federal charges on February 9, 2023).

### XIII.   UNITED STATES' APPROVAL

I have reviewed this matter and the agreement.  This agreement constitutes a formal plea offer from the Government.  Any oral discussions with the Defendant and defense counsel about a plea do not constitute a plea offer.  Any written offer or agreement made before this agreement is no longer a valid offer by the Government and is rescinded.  I agree on behalf of the United States that the terms and conditions set forth above are appropriate and are in the best interests of justice.

JOSHUA D. HURWIT
UNITED STATES ATTORNEY
By:

_____                     5/19/23
KATHERINE HORWITZ                                      Date


KRISTEN CLARKE
ASSISTANT ATTORNEY GENERAL
By:

_____                     5/19/23
ALEC WARD                                             Date


### XIV.   ACCEPTANCE BY DEFENDANT AND COUNSEL

I  have  read  and  carefully  reviewed  every  part  of  this  agreement  with  my  attorney.   I understand the agreement and its effect upon my potential sentence.  Furthermore, I have discussed all of my rights with my attorney and I understand those rights.  No other promises or inducements have been made to me, directly or indirectly, by any agent of the Government, including any Assistant United States Attorney, concerning the plea to be entered in this case.  I understand that this agreement is a formal plea offer from the Government.  Any oral discussions between the Government and me or my counsel about a plea do not constitute a plea offer.  Any written offer or

**Plea Agreement**                                14                          Rev. March 2022

agreement made before this agreement is no longer valid and is rescinded.  In addition, no one has threatened or coerced me to do, or to refrain from doing, anything in connection with this case, including entering a guilty plea.  I understand that, if I am not a citizen or naturalized citizen of the United States, by pleading guilty in this case it is virtually certain that I will be removed from the United States.  I am satisfied with my attorney's advice and representation in this case.


_____          _____
MATTHEW ALAN LEHIGH                                Date
Defendant

   I have read this agreement and have discussed the contents of the agreement with my client. This document accurately sets forth the entirety of the agreement.  I have conveyed all written offers from the Government to the Defendant pursuant to *Missouri v. Frye*, 566 U.S. 134, 144-47 (2012). I understand that this agreement is a formal plea offer from the Government.  Any oral discussions between the Government and me or my client about a plea do not constitute a plea offer.  Any written offer or agreement made before this agreement is no longer valid and is rescinded.  I have discussed with my client the fact that if my client is not a citizen or naturalized citizen of the United States, it is virtually certain that my client will be removed from the United States. I concur in my client's decision to plead guilty as set forth above.


_____          _____
MARK ACKLEY                                        Date
Attorney for the Defendant


**Plea Agreement**                           15                           Rev. March 2022